MAUDE A. LUTHER, as Administratrix of the Estate of GEORGE W. LUTHER, Deceased, Respondent, *v.* STANDARD LIGHT, HEAT AND POWER COMPANY, Appellant.

Negligence — action for death of employee of electric light company killed by current of electricity turned on by co-servant — insufficiency of evidence to show that act of co-servant was by order, or negligence, of superintendent of defendant.

Where a lineman of an electric light and power company was killed, while repairing a wire, by an electric current turned on the wire by a fireman at the power house, acting, as alleged by plaintiff, under the order of the superintendent of the company, a judgment, recovered for his death, in an action brought against the company under the Employers' Liability Act (Labor Law, §§ 200–204; Cons. Laws, ch. 31), cannot be sustained unless it is shown by the evidence that the superintendent was negligent either in directing the current to be turned on, or in doing some act which he could reasonably anticipate would be construed as such a direction. Evidence that the superintendent, calling from a distance, told the fire-

man to answer the telephone in the power house, the bell of which was ringing, and that the fireman understood the superintendent to tell him to turn on the current and that he did so, is insufficient to sustain a verdict for the plaintiff, on the question submitted to the jury, *i. e.*, whether the superintendent did, in fact, direct the turning on of the current.

*Luther* v. *Standard Light, Heat & Power Co.*, 151 App. Div. 904, reversed.

(Argued April 28, 1913; decided May 13, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 17, 1912, affirming, by a divided court, a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Harvey D. Hinman* for appellant. It was reversible error to deny defendant's motions for a nonsuit. To permit the jury to pass on the question of whether or not Allen directed Robinson to turn on the current was an invitation to them to enter the realm of speculation and conjecture. (*Laidlaw* v. *Sage*, 158 N. Y. 73; *Dobie* v. *Armstrong*, 160 N. Y. 584; *Beck* v. *Catholic University*, 172 N. Y. 387; *Hudson* v. *R. R. Co.*, 145 N. Y. 408; *McCarthy* v. *C., R. I. & P. Ry. Co.*, 83 Iowa, 485; *Harris* v. *Norfolk & Western R. R. Co.*, 88 Va. 560; *Gouin* v. *Wampanog Mills*, 172 Mass. 222; *T. H. & I. R. R. Co.* v. *Becker*, 146 Ind. 202.) There was no evidence upon which to base a verdict in favor of the plaintiff under the law of the case as laid down by the trial judge, and there was no evidence warranting the submission of the case to the jury and the judgment appealed from should be reversed. (*Algur* v. *Gardner*, 54 N. Y. 360; *Palmer* v. *Kelly*, 56 N. Y. 637; *Storey* v. *Brennan*, 15 N. Y. 524; *Small* v. *Smith*, 1 Den. 583; *Lamb* v. *Union Ry. Co.*, 195 N. Y. 260; *O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *Rupert* v. *R. R. Co.*, 154 N. Y. 90; *People* v. *Kennedy*, 32 N. Y. 141; *Johnson* v. *R. R.*

*Co.,* 173 N. Y. 79; *Cunningham* v. *Gans,* 79 Hun, 434.) It could not reasonably be anticipated by Allen that his words, "Homer, tend to your telephone," would be misunderstood and misinterpreted as a suggestion to turn the current into the Bainbridge line, and, therefore, Allen was not guilty of negligence in using those words. (*Hubbell* v. *City of Yonkers,* 104 N. Y. 434; *Flinn* v. *Medical Assn.,* 64 App. Div. 490; *Burke* v. *Witherbee,* 98 N. Y. 562; *Cresswell* v. *U. S. & C. Co.,* 115 App. Div. 14; *Kirby* v. *D. & H. Co.,* 20 App. Div. 473; *Jex* v. *Straus,* 122 N. Y. 293; *Connelly* v. *Rist,* 20 Misc. Rep. 31; *Murphy* v. *City of N. Y.,* 89 App. Div. 93; *Purl* v. *Fireworks Co.,* 133 App. Div. 310; *McGrath* v. *Conduit Co.,* 122 App. Div. 424; *Dougan* v. *Transportation Co.,* 56 N. Y. 7; *Cleveland* v. *Steamboat Co.,* 68 N. Y. 306; *Loftus* v. *Ferry Co.,* 84 N. Y. 459.)

*C. L. Andrus* and *C. H. Seeley* for respondent. Under the circumstances in this case the death of plaintiff's intestate could not have happened without negligence on the part of defendant or its employees and such negligence is presumed, and the burden of explanation is upon the defendant. (*Robinson* v. *Consolidated Gas Co.,* 194 N. Y. 37.) The question of the defendant's negligence was properly submitted to the jury by the trial court, and the evidence is sufficient to sustain the verdict. (*Continental Bank* v. *Tradesmen's Bank,* 173 N. Y. 272; *McAffee* v. *Dix,* 101 App. Div. 69; *Hurley* v. *Alcott,* 134 App. Div. 631; *Boyle* v. *McNulty,* 129 App. Div. 412; *La Monaco* v. *Murphy Const. Co.,* 132 App. Div. 674; *McHugh* v. *Manhattan Ry. Co.,* 179 N. Y. 385; *Harris* v. *B. M. & E. Works,* 188 N. Y. 141; *Guilmartin* v. *Solvay P. Co.,* 189 N. Y. 495.)

Willard Bartlett, J. This is a suit under the Employers' Liability Act (Chap. 36 of the Laws of 1909) in which the plaintiff has recovered damages against the

defendant corporation for having negligently caused the death of her husband while in its employ as a lineman on Sunday, the 27th day of June, 1909. The defendant's power plant is situated between Sidney, in Delaware county, and Unadilla in Otsego county and supplies electric light and power to those villages and also to the village of Bainbridge. On the day of the accident which caused the death of plaintiff's intestate he was sent out as one of a number of men in the employ of the defendant to change the location of the wires on the Bainbridge line from old poles to new ones; and in order that this work might be done with safety the electric current was turned off from the Bainbridge line. This was done by the engineer in the power house pursuant to instructions from Mr. Edwin O. Allen, the superintendent of the plant, who told the engineer that the men were about to work on the Bainbridge line. The engineer testified that there was a rule of the defendant to the effect that when the current was turned off under such circumstances it was never to be turned on until word had been received directly from the men working upon the line "that they were through and off the line."

The work appears to have proceeded in safety until about half-past four on Sunday afternoon. At this time one Homer Robinson, an employee of the defendant at the power house, went on duty there looking after the dynamos, fires and boilers. He was told by an assistant in the boiler room when he arrived "that the boys were working on the Bainbridge;" and he went to work cleaning fires and wheeling coal. The residence of the superintendent was situated one hundred and fifty feet north of the power house on the other side of the highway. While Robinson was wheeling in coal his attention was attracted by a call from Mr. Allen, the superintendent, who was standing upon the veranda of his house and "had his arm above his head pointing to a fixture." Robinson's testimony was taken by commission and does

not disclose what was the fixture thus mentioned or what the significance of Mr. Allen's gesture. He does not undertake to state what Mr. Allen said, but declares that he did not hear the words which Mr. Allen used; although he evidently understood them to have some reference to the telephone in the power house, the bell of which was ringing steadily at the time. He testifies that he said to Mr. Allen, "they phone," to which Mr. Allen nodded his head. Robinson thereupon went into the office, took down the receiver and said "hello," but nobody answered. He stopped the ringing of the telephone bell, went out and moved the switch which turned the current on to the Bainbridge line. The plaintiff's intestate was then engaged in splicing one of the high voltage wires that carried this current, and he was instantly killed by the shock which he received.

Notwithstanding his inability to hear the words used by Mr. Allen, Robinson testifies that he understood them to be a direction to turn on the current. He concedes that he did not hear the telephone bell ringing in the office until Mr. Allen called to him. It is proper to consider Mr. Allen's testimony as to what he actually said in view of Robinson's failure to distinguish the language used. Mr. Allen testifies that when he heard the telephone gong ringing he went out on to his porch and shouted to Robinson, "Homer, 'tend to your telephone." According to his testimony all that Robinson did in response was to look up and start for the plant. After the accident was discovered Robinson told Mr. Allen that he understood him to say to put on the Bainbridge current, but Mr. Allen declared that he did not know how Robinson came to say this, as he had said nothing to him about putting on the current.

In order to sustain a recovery by the plaintiff in this case under the Employers' Liability Act it is necessary to show that the superintendent was negligent either in directing the current to be turned on or in doing some act

which he could reasonably anticipate would be construed as such a direction. It does not seem to us that the evidence in this case viewed in the most favorable light for the plaintiff will support the inference that Mr. Allen was negligent in either respect. How a simple call to an employee in words which that employee was unable to distinguish at the time and of course is unable now to recall can be held to amount to a direction to turn on an electric current it is difficult to imagine. If we amplify the evidence in behalf of the plaintiff by Mr. Allen's own statement as to the words which he used the case is no stronger; for it is impossible to conceive how any reasonable person could have supposed that a direction to attend to a telephone which was ringing insistently could be tortured into an instruction to turn on a dangerous electric current before being satisfied that the men were off the Bainbridge line; or, indeed, to turn it on at all. There is absolutely no evidence to sustain the verdict in this case on the issue which was submitted to the jury, to wit, the question whether the superintendent did in fact direct the turning on of the current. Nor was there any evidence to sustain a finding against the defendant upon the issue first submitted but afterwards withdrawn by the trial judge; that is to say, the question whether the acts of the superintendent were such as he ought, in the exercise of reasonable care, to have believed might be misunderstood by Robinson. There was a complete failure of proof in either aspect of the case. Upon the evidence the accident appears to have been entirely due to the gross negligence of a fellow-servant for which the law does not render the master liable.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., WERNER, CHASE, COLLIN and HOGAN, JJ., concur; HISCOCK, J., concurs in result.

Judgment reversed, etc.